```
 1
 2              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
 3                 Civil Action No. 08-2071       RECEIVED

 4     ------------------------------                JAN 08 2009
       In Regard to the Matter of:
 5                                                 JOEL SCHNEIDER
                                                 U.S. Magistrate Judge
       Bayside State Prison              OPINION/REPORT
 6     Litigation                           OF THE
                                          SPECIAL MASTER
 7     COREY CHANEY

 8              -vs-

 9     WILLIAM H. FAUVER, et al,

10              Defendants.

11     ------------------------------

12

13

14
                        *     *     *     *
15
                 FRIDAY, DECEMBER 12, 2008
16
                        *     *     *     *
17

18

19

20
       BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER
21

22

23

24

25
```

```
 1
 2
 3
 4
 5              Transcript of proceedings in the above
    matter taken by Theresa O. Mastroianni, Certified
 6
    Court Reporter, license number 30X100085700, and
 7
    Notary Public of the State of New Jersey at the
 8
    United States District Court House, One Gerry Plaza,
 9
    Camden, New Jersey, 08102, commencing at 1:05 PM.
10
11
12
13
14
15
16
17
18              MASTROIANNI & FORMAROLI, INC.
19          Certified Court Reporting & Videoconferencing
20                  251 South White Horse Pike
21                    Audubon, New Jersey 08106
22                         856-546-1100
23
24
25
```

```
 1
 2    A P P E A R A N C E S:
 3
 4         ROSELLI & GRIEGEL, PC
           BY:   MARK ROSELLI, ESQUIRE
 5               - and -
           BY:   CHARLES J. MOORE, ESQUIRE
 6         1337 STATE HIGHWAY 33
           HAMILTON SQUARE, NEW JERSEY  08690
 7         609-586-2257
           ATTORNEYS FOR THE DEFENDANTS
 8

 9
           LOUGHRY & LINDSAY, ESQUIRES.
10         BY:   JUSTIN T. LOUGHRY, ESQUIRE
           330 MARKET STREET
11         CAMDEN, NEW JERSEY 08102
           856-968-9201
12         ATTORNEYS FOR THE PLAINTIFFS
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          JUDGE BISSELL:  I'm now reopening
2  proceedings in the case of Corey Chaney, docket
3  number 08-2071.
4          This opinion/report is being issued
5  pursuant to the directives of the Order of Reference
6  to a Special Master and the Special Master's
7  Agreement and the guiding principles of law which
8  underlie this decision to be applied to the facts
9  upon which it is based as set forth in the jury
10 instructions in the Walker and Mejias jury charges to
11 the extent applicable to the allegations of Mr.
12 Chaney.
13         As finalized after review under Local
14 Civil Rule 52.1, this transcript will constitute the
15 written report required under paragraph seven of the
16 Order of Reference to a Special Master.
17         Mr. Chaney was housed at the Farm.  He
18 claims he was housed there for several weeks,
19 virtually throughout the duration of the lockdown.
20 He also claims in his testimony that at night on the
21 third shift into his barracks repeatedly three to
22 four times per week a SOG unit would enter and
23 proceed to beat the inmates, including himself and,
24 indeed, almost everyone in the barracks as he
25 described it about the neck, back, legs and so forth

1   every week.  And that the third shift housing
2   officers proceeded to ignore this.
3                One excerpt of testimony describing his
4   alleged assaults or the assaults upon him occurred in
5   the course of Mr. Griegel's cross-examination.
6                By Mr. Griegel beginning at line 21 on
7   page 125.  It's not a lengthy passage, I'm going to
8   read it into the record here.
9                Question:  Now, if I told you that the
10  murder of Officer Baker was on July 30th, 1997, do
11  you have a recollection of that?  Does that sound
12  right?
13               Answer:  Yes.
14               Question:  Okay.  Now, you testified
15  that sometimes the SOG officers would come into your
16  barracks, correct?
17               Answer:  Yes.
18               Question:  That would be three to four
19  times a week, correct?
20               Answer:  During the week, yes.
21               Question:  So if the lockdown -- how
22  long was the lockdown portion?
23               Answer:  Movements started around
24  September that I remember.
25               Question:  So that lockdown would be at

```
 1  least four weeks, correct?
 2              Answer:  Yes, at least four weeks.
 3              Question:  And you recall the SOG being
 4  there at least four weeks?
 5              Answer:  Yes.
 6              Question:  Okay.  So three to four
 7  times a week, then, you would have had 12 to 16
 8  midnight visits or middle of the night visits from
 9  SOG; is that correct?
10              Answer:  Yes.
11              Question:  Each of those times they
12  spent approximately 15 or so minutes going around
13  these open spaces and beating up each of the inmates,
14  correct?
15              Answer:  Yes.
16              Question:  Randomly and
17  indiscriminately they were beating people?
18              Answer:  Yes.
19              Question:  With their sticks?
20              Answer:  Yes.
21              Question:  And you were beaten -- of
22  those 12 to 16 beatings on how many occasions were
23  you beaten, 12 to 16?
24              Answer:  Every time they came in.
25              Question:  So about 12 to 16 times?
```

Case 1:08-cv-02071-RBK-JS   Document 4   Filed 01/08/09   Page 7 of 10 PageID: 27

7

```
 1              Answer:  Yes, you can say.
 2              Now, I've had occasion in instances
 3  where the testimony has been more credible to reach
 4  conclusions based upon appropriate inferences from
 5  the records generated in those cases that SOG
 6  officers and SOG units did go to the Farm where they
 7  had little reason to be, surely more often than
 8  required to be down there.  And I think as I've
 9  described in at least one other case they engaged in
10  something in the nature of recreation on their behalf
11  by harassing and in some cases assaulting inmates
12  housed on the Farm; once again, probably (among other
13  things) out of a knowledge that reporting of those
14  incidents would be less likely from these people in
15  full minimum, many of them on the verge of release
16  from custody or release at least to a halfway house.
17              But Mr. Chaney's description totally
18  defies credibility.  That somehow or other one or
19  more of these SOG units would come in on a nightly
20  basis during the four weeks of the lockdown and
21  precipitate these beatings, ignored by the third
22  shift housing officers with all they had at stake, is
23  inherently incredible.
24              But, if that were not enough, the
25  contemporaneous records reflecting the housing of Mr.
```

1  Chaney on the Farm revealed that he was only at the
2  Farm for a total of four days during the lockup from
3  August 11th to August 15th before he was then
4  transferred to Ancora.  D-293 is among the exhibits
5  that demonstrates that.  So this, of course, means he
6  wasn't even there when supposedly these repeated
7  beating events occurred.
8              Now, Mr. Chaney denies the accuracy of
9  this record, but there is little else to support that
10 it was inaccurate.  I'm not saying that all records
11 are accurate at all times whether in this institution
12 or at any other institution, but records regarding
13 prisoner movement and prisoner presence in one or
14 more of the units are extremely important.  They
15 involve counts, they involve questions of who is AWOL
16 or anything else.  And so under all the circumstances
17 there is nothing that impeaches the documentary
18 evidence that Mr. Chaney, other than from the days of
19 August 11 through August 15th, 1997, wasn't even on
20 the Farm in the barracks.
21             Finally, although not every item of
22 evidence has been discussed in this opinion/report,
23 all evidence presented to the Special Master was
24 reviewed and considered.
25             For the reasons set forth above I

1   recommend in this report that the district court
2   enter an order and judgment of no cause for action
3   with regard to Corey Chaney.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E
 2
 3        I, Theresa O. Mastroianni, a Notary Public and
 4   Certified Shorthand Reporter of the State of New
 5   Jersey, do hereby certify that the foregoing is a
 6   true and accurate transcript of the testimony as
 7   taken stenographically by and before me at the time,
 8   place, and on the date hereinbefore set forth.
 9        I DO FURTHER CERTIFY that I am neither a
10   relative nor employee nor attorney nor counsel of any
11   of the parties to this action, and that I am neither
12   a relative nor employee of such attorney or counsel,
13   and that I am not financially interested in the
14   action.
15
16
17
18
19           _____
                Theresa O. Mastroianni, C.S.R.
20              Notary Public, State of New Jersey
                My Commission Expires May 5, 2010
21              Certificate No. XIO857
                Date: January 2, 2009
22
23
24
25
```